We'll call the next case, United States of America v. Robert Scott. Ms. Wilson. Thank you, Your Honor. Good afternoon, Your Honors. My name is Jennifer Wilson. I represent the appellant, Robert Scott Sr. and I would ask to reserve two minutes for rebuttal, if I may. That request will be granted. Thank you, Your Honor. This is a section 2255 matter arising from a criminal case in the Middle District of Pennsylvania. The district court certified two issues on appeal, both relating to Mr. Scott's guilty plea. The first issue is whether trial counsel, Mr. Martino, was ineffective for failing to withdraw Mr. Scott's guilty plea promptly. The second issue is whether the district court erred in not allowing Mr. Scott to withdraw his guilty plea before it was accepted. I think that to put both of these issues in context, it's important for the court to understand three, what I perceive as critical time periods in the life of this case. This is an older case. It dates back quite a few years, but I think the first critical time period is September 28, 2007. This was the date when Mr. Scott and counsel appeared before the district court for a change of plea hearing. Mr. Scott, on that date, indicated his desire to plead guilty pursuant to a plea agreement he had signed on that date. At the conclusion of the change of plea hearing, the district court deferred acceptance of the plea pending review of the pre-sentence report. Now, time to move forward. The second time period I would ask the court to consider as critical is roughly October of 2007 through up to August 15, 2008. What was happening in this time period, according to the record in this case, is there was correspondence and discussion between Mr. Scott and his trial counsel about withdrawing his plea. Now, it's undisputed that trial counsel did not make a motion to the court prior to August 15, 2008, which takes me to the third time period, August 15, 2008. There were two court conferences on that date. The first was off the record. It was not transcribed. That conference was between counsel for the government, counsel for the defendant, and the court. We now know, based on the record made in this 2255 proceeding, that trial counsel notified the court that Mr. Scott wished to withdraw his guilty plea. There's then an interim period, and then there's a second conference, which was on the record and transcribed, during which the district court notified counsel that it was accepting the plea and the binding plea agreement and that Mr. Scott would have to move through counsel in writing to withdraw his plea. Now, I perceived a threshold issue in this case when I was filing the original brief, and that threshold issue, as I characterized it to the court, was when did the district court actually accept the plea? And when do you say they accepted the plea? August 15, 2008, in the second on-the-record conference. But having had the appeal, the original appeal, which brought up the issue of the timing of the plea, can we re-examine that? Yes, Your Honor, because the precise issue being raised in this 2255 proceeding was not addressed in the way it's being raised now. Let me explain. On direct appeal, the way the issue was framed regarding the withdrawal of the guilty plea was as follows. Whether the district court abused its discretion by finding that Mr. Scott did not have a fair and just reason for moving to withdraw his plea. That's not what your client raised. Well, Your Honor, that's true. In the appellant's brief, and this is where it gets very, very close. The appellant raised the same issue that you're raising here today. Right, but the appellant did not have any record support. There are, I believe, two different instances in the appellant's brief on direct appeal in which the appellant's attorney stated that Mr. Scott, through counsel, asked the court to withdraw the plea before the district court accepted the plea. Now, there was no record evidence to support that assertion, and in fact, in my reply brief, I made note of the fact that the sentences in appellant's brief making that statement are unsupported by any citation to the record. And that's because the record did not exist at that point. I apologize, Your Honor, I have a cold. And in fact, not only did the record exist, because there hadn't been a 2255 evidentiary hearing during which trial counsel gave the testimony and the description, the government actually asserted in their appellee's brief on direct appeal that the plea had been accepted earlier, on September 28, 2007. So if you carefully review the appellee's brief, their position then on direct appeal was, oh, no, no, this plea was accepted way back at the change of plea hearing, that first critical time period. So there was a dispute between appellant and appellee about when the plea was accepted. And what this court held in the opinion on direct appeal was that the record, the record, of course, that existed then, establishes that the district court accepted Mr. Scott's guilty plea before any mention that Scott may file a motion to withdraw the plea. That was based on, and what was cited to, was the on-the-record transcribed conference that took place on August 15, 2008. But if you believe Mr. Martino, and if you believe Mr. Martino's testimony, how did this all happen? Well, Your Honor, the district court did believe Mr. Martino's testimony. Of course, that's not helpful to my client when it comes to ineffective assistance, the first issue. But, again, the district court did believe Mr. Martino's testimony, and it was unrefuted by any evidence presented by the United States. But how did this all happen? Well, I suspect, Your Honor, and this is purely speculation on my part, this case had had a slow progression. Mr. Scott had indicated his desire to plead on the eve of trial. Multiple other defendants had proceeded to trial. And his stated desire to withdraw his plea came quite a bit of time later than his change of plea hearing, after there had been a pre-sentence report prepared and objections filed by his counsel. So I suspect Judge Keene may have been frustrated that this far into the proceeding, Mr. Scott indicated a desire to withdraw the plea. And that would be an understandable frustration. I think we could all relate to the position the district court was put in. But Mr. Martino's testimony was unrefuted, and he was very clear, I can cite to the record portion, he was very clear that he indicated to the court that his client wished to withdraw the plea, and then the district court indicated the plea was accepted. Does it make any difference that the district court, when she went back on the record, when she went on the record on August the 15th, used the words that she was accepting the binding plea agreement, before Mr. Martino stood up and said, wait a minute, Your Honor, I indicated that Mr. Scott wants to withdraw his plea. Does it make any difference that she used the words accept the binding plea agreement, and later stated that the plea is hereby accepted? Your Honor, there has been a great deal of inconsistency. The answer to your question, I think, is no. No? And the square answer to your question, before I rather on, is the government has agreed with the position taken by Mr. Scott that the plea was not accepted until August 15, 2008. Yes, exactly. Right. Right. And, Your Honor, the transcribed portion, or I should say the transcribed conference that occurred on August 15, was the only record that existed at the time of the direct appeal. And so appellate counsel... This is a slight digression, but in connection with that appeal, shouldn't they have gotten pertinent transcripts? I presume they did. Appellate counsel was not trial counsel. Mr. Scott's trial counsel was Mr. Martino. Mr. Martino remained with Mr. Scott through the guilty plea and then filed objections to the pre-sentence report. He then withdrew, or I think actually Mr. Scott asked that he be removed. So there was a different attorney for sentencing, and then there was a third attorney assigned for Mr. Scott for appeal. Okay, but because that attorney on the appeal could have gotten all the transcripts, including the one in September where the judge says, I'm not going to accept the plea yet, the fact that that could have been obtained for the appeal and wasn't, doesn't that bar that issue from being raised at this stage on the post-conviction relief? No, Judge Roth, and the reason is the one critical piece of evidence that I think creates the new issue for this proceeding is the untranscribed off-the-record conference that occurred on the morning of August 15, 2008. The only way we have a record now of what occurred at that conference was because my client filed a motion to vacate under 2255. But that involved Mr. Scott's counsel, albeit maybe not appellate counsel, but that was knowledge that that counsel had, and if you want to contest in your appeal the finding on when the guilty plea was accepted, don't you need to bring all that in? You can't just say, oh, well, I lost that time. Let's see, what else could I maybe find and try it again on habeas? Sure. So Attorney Harris, who was appellate counsel on direct appeal, arguably could have conferred with Mr. Martino, who was the defense attorney present in the room for this conference I'm referring to, the August 15 conference, and because it was an untranscribed conference, I suppose Attorney Harris could have an affidavit. I would imagine that if on direct appeal Ms. Harris had presented an affidavit of trial counsel explaining what occurred at that proceeding, the government would have protested and asserted that it needed to have the opportunity to cross-examine Mr. Martino or to present evidence on that issue. Admittedly, that did not occur. Attorney Harris did not do that. Instead, what she did was she wrote a sentence in her brief, as Judge Fischer indicated, actually I think two sentences, indicating this fact existed, that the judge actually heard from trial counsel that Mr. Scott wanted to withdraw his plea and then accepted the plea. But there was nothing cited to. There was no evidentiary support for that bare factual assertion. So could Attorney Harris have handled that differently? Possibly. I'll defer to the court as to whether the rules of appellate procedure would have permitted her to submit an affidavit. I am unsure at the moment. I'd be happy to brief that if the court would like. What's the erroneous advice of Mr. Martino? At what point does it become erroneous such that an IAC claim is evident? It's not advice in this instance. My client's position on the ineffective assistance is that he, between that second time period I was referring to, between October 2007 up to August 15, my client's testimony was, hey, I was telling my attorney, withdraw that plea. And he failed to do that. And during the time period I was telling my attorney to do that, I could have withdrawn my plea for any reason or no reason. I thought part of your adversary's argument was that there may have been instances in your second time frame, which is October 2007 to August 2008, when he seemed to initially express a desire to change his plea, but it always ended up that he, I don't want to use the verb withdraw, he changed his mind yet again. I want to, no I don't. I want to, no I don't. So how can that period be a period that you ascribe any failure to follow your client's desire? Right. Well, Your Honor, certainly there was a conflict in testimony at the evidentiary hearing in this 2255 proceeding. My client testified, no, I was firm, withdraw my plea, and that was my position throughout. Mr. Martino testified, and there was a conflict in the testimony. He described, and the government obviously has endorsed Mr. Martino's description, which was this flip-flopping done by Mr. Scott. One day it was let's withdraw, and then it was, well, maybe let's not. But what I argued in my brief is the court, the district court, ended up crediting the testimony of Mr. Martino on this issue and rejecting the testimony of Mr. Scott. And I think the error in doing that was that Mr. Martino was testifying in this evidentiary hearing seven or eight years after the fact from memory where there is contemporaneous evidence, which we presented to the court. You can find it in the record at Appendix Page 168, a July 2008 letter from my client to his attorney saying, withdraw my plea. It's handwritten. You know, it's a little hard to make out, but there was testimony about it at the hearing. So the contemporaneous evidence shows that Mr. Scott said definitively to his attorney, withdraw my plea, prepare for trial, I want my day in court. But wasn't Martino testifying too? Sure, he kept telling me he wanted to withdraw his plea. I told him that was a bad idea, don't do it. And so then he would put it off again. That was Mr. Martino's testimony. However, I specifically asked him at the evidentiary hearing about the time period between July 8, 2008, when he received this letter from Mr. Scott, and then August 15, 2008. And I think Mr. Martino's testimony is a little vague about whether he actually met or spoke with Mr. Scott between those two dates. Certainly, I agree, Judge Roth, he said at various points there was back and forth on the decision whether to withdraw the plea. But if you focus in on Mr. Martino's testimony about the time period between receiving that last letter and showing up in court and withdrawing the plea, I don't think it's clear from his testimony that he met with or discussed that matter with my client between those two dates. We're reviewing this on abuse of discretion, right? Yes, with respect to the factual finding made by the district court to credit Mr. Martino's testimony, yes, that is an abuse of discretion standard. All right, we'll have you back on rebuttal. Thank you, Your Honor. We'll hear from Mr. Cerruti. Good afternoon. May it please the Court, Stephen Cerruti on behalf of the United States. On the issue of ineffective assistance of counsel, the United States' position is much like the district court found, which is that Mr. Martino really couldn't have done any more than what he did, given that he had a client that was vacillating between whether he wanted to withdraw his plea or did not want to withdraw his plea. It is clear from Mr. Martino's testimony that the district court did credit at the 2255 hearing that this was a pattern of dealing that he had established with Mr. Scott, where Mr. Scott would write him a letter or communicate in some way, I want to withdraw my plea, but then when Mr. Martino did his job as a defense counsel and talked to his client about that and advised him as to the positives or negatives to that, Mr. Scott would change his mind. Wasn't part of the issue that Mr. Martino was relating incorrect information? In the one March 18, 2008 letter, I believe it was, he did impart incorrect information. That was just in the letter, however. He then followed up with a meeting, and his testimony of the 2255 hearing was before he had his meeting with Mr. Scott, he did the research, figured out that he was wrong, and then when he talked to Mr. Scott at that time after that March 18 letter, made it clear to Mr. Scott that he was wrong and that he could withdraw, but he didn't think it was a good idea for a variety of other reasons. This obviously convinced Mr. Scott to change his mind on withdrawal. This then apparently continued to happen, and yes, we do have the July 8 letter that opposing counsel referred to. That letter is not as unequivocal as she has made it out to be, however. You read through that letter, the first half, and again, it is somewhat difficult to read. You do have a lot of talk about, I'm not taking responsibility for this, I'm going to withdraw my plea. But then as you get to the second part of that letter, and again, it's on page 168 of the appendix, he says, first of all he talks about letting the U.S. attorney know that he does not want to accept the plea, he doesn't reference the court, but then talks about how, you know, we need to talk before my court date, so I don't want, and I'm not sure exactly what he says next, to act the fool. I'm not taking some time for shit I didn't do. That seems to be then, he wants to continue, he wants to talk to his attorney about this issue before the attorney goes running off and telling the court, well, he wants to withdraw his plea. So that letter is not nearly as unequivocal as the opposing counsel makes it out to be, and is a continuation of the pattern that had been established for months at that point, of these vacillations and running hot and cold. Should this circuit establish a rule that the acceptance of a plea should be done formally on the record? I don't believe that's necessary. I think it would be a best practice. There's no question we probably could have avoided some of what we're talking about here if it was a practice of the district courts to formally and explicitly on the record say, I accept this plea. That being said, the court did that here, did they not? The court said on the record that they accept the plea. Well, I think the issue is whether it did so or not back in 2007. And at that point the court said, I defer. Was that your question? Well, yeah. I mean, one of the issues of contention was at the time that the Tilted Plea hearing was held, it's not clear what the court did. Now, the government has conceded that it was not until August, in fact, that the court accepted the plea. But then again, you have in all that discussion, you have the mixing up of the terms, the plea agreement and the plea, and would it be helpful simply to say in this circuit, as in about half the other circuits do, that the plea is not accepted until it's formally accepted on the record by the court? Well, the United States position would be that there isn't necessarily a number of other circuits that make that requirement. If you look at the actual cases that were cited by opposing counsel, we have situations very similar to this, where the court at the initial change of plea hearing had said, well, I'm deferring acceptance of the plea. And then, yes, they did formally accept it later. But there's a little difference between that and saying that there is a hard and fast rule that you have to specifically say it is accepted. And that's the issue on which the circuits are split. Well, you know, I don't believe that there is a circuit split. Actually, if you look at the facts of the cases, what you have is you have some cases that say where the district court says something explicitly, meaning that they're not accepting the plea, using language admittedly the same as what we have the court doing here in September of 2007, saying we defer acceptance of the plea. Or in two of those cases, it involved magistrate judges who had done the plea colloquy, made a recommendation that the plea be accepted, but the district court had not acted on it, I think a somewhat similar or dissimilar situation than what we have here. And, you know, the Eighth Circuit in head, the head case, said that, yeah, if you have stuff on the record which would indicate that the district court is not accepting the plea, then the plea is not accepted. But that doesn't mean that you cannot have an implied acceptance under other courts. The first, second, seventh, and ninth circuits require the district court to explicitly and unambiguously state that the plea is accepted. I know that's how it's characterized by opposing counsel, but I think if you actually look at those cases when they're talking about the facts of those cases, the importance is that you have judges who either have not accepted a recommendation from a magistrate judge regarding acceptance of the guilty plea. In which case, we can see that at that point you want a district court to explicitly accept the recommendation. So you're saying it is not quite as clear of a split as counsel is asserting? That is exactly the position of the United States, and it's one that we've taken in other cases as well. Let me ask this question. If the appellant is correct that his counsel's inaction forecloses his ability to withdraw his plea for any reason or no reason, why isn't that in and of itself constitutionally deficient performance? Well, if you look at the facts here with what Mr. Martino testified to and the district court credited, he did go to try and alert the court as early as he could once he decided that his client really,  So under the facts of this case, again, the United States believes he did do everything that he could have done at that time, given the way his client had been behaving. If we're talking about a hypothetical where Mr. Scott maybe a month ahead of time said, I want to withdraw, there's no question about it, no amount of convincing that the defense counsel tried to do to get him to change his mind and not wish to withdraw, and then the defense counsel sat on his hands and didn't withdraw, that would be problematic. But that is not what we have here. But I guess my question was slightly different. If Martino's inaction constricted the manner in which or the ability of Scott to engage in his change of plea, isn't the fact that counsel put his client in that position deficient performance? Well, I guess it's not my place to ask you questions, obviously, but in what manner would we be looking at a constriction? If we're talking about the fact that the moment he gets the letter, he doesn't march right to the court and say, my client wants to withdraw his guilty plea. The constriction is that he's foreclosed from any reason or no reason. So this is a change in standard, then, for withdrawal of the plea. If you can ascribe to Mr. Martino's action or inaction the result that the standard changed, then yes, you have a deprivation of a constitutional right. If he had no reasonable basis for doing so, then yes, there's a problem. The United States would argue here that nothing Martino did or didn't do resulted in that constriction. Because there was nothing unequivocal before August 15th. Exactly. And the moment that he decided that his client was dead set now on withdrawing the plea, he headed up, talked to the court clerk to try and get this off-the-record conversation held. And, of course, it's problematic that that was off-the-record, because we don't know exactly what happened there. We do know two facts which are salient to the point about the timing of the judge accepting the plea and or the agreement. Yes, Mr. Martino testified that he went up there and as part of his conversation in chambers with the judge and with the AUSA said my client wants to withdraw his plea. But we also know from what the judge said at the very beginning, acknowledged by Mr. Martino of the on-the-record conference that day, she said that as I've indicated to the parties earlier, I am accepting the plea agreement. So what you can take from that, I think, is that during that conversation, you had the judge communicating she was accepting the plea agreement and you had Mr. Martino indicating that his client wanted to withdraw the plea. What we don't know, and what nothing Mr. Martino says makes clear, is which happened first. Well, does it matter? Does it matter if the plea had not, you acknowledge that the plea was not accepted until August 15, 2008. Correct. You also acknowledge that anything that took place in chambers happened before Judge Kaine went on the record. Correct. Okay. And you also acknowledge that you have to acknowledge, and Judge Kaine acknowledges, that she accepts the credibility of Mr. Martino when he testified at the evidentiary hearing on the 2255. Correct. Okay. If you put all those three things together, Is there enough there to say that the district court erred in not allowing, at the habeas hearing that was held before we were here, that it erred in not allowing Scott to withdraw the plea? No, because that's dependent on what happened in that off-the-record conference. If you simply look at what happened... But Mr. Martino's testimony fills that gap as to what happened. No, it doesn't, actually. It says that he made the motion. It says he made the motion, and I know you're trying to say, well, she said in chambers she was going to accept the plea or the plea agreement, but he says, wait a minute, Judge, you haven't done this yet on the record. My client wants to withdraw the plea, and he can withdraw the plea for any reason or no reason. She then goes out and puts on the record that she's accepting the plea agreement. He says, wait a minute, Your Honor, I said Mr. Scott wants to withdraw his plea. She says, no, it's too late, and I'm accepting this plea. Now, forgetting about those semantics, it seems to me if you put all the pieces together, if you put all the pieces together here, the only thing that can stop, the only thing that, the strongest point in your favor is the previous litigation bar, and I don't know that that's something you've raised that strongly, but it certainly was a basis for Judge Keene's decision. Well, Your Honor, I haven't raised it that strongly here in argument because we've gotten into some other issues, but very briefly, I know you said to put the semantics of it aside, but the way you related the conversation potentially going on in that off-the-record conference, there's no record that it actually happened that way. All we have is Mr. Martino saying, I said to the court he wants to withdraw. Why isn't that enough? It would be enough if that was before the judge said I'm accepting the plea. But that was clearly not on the record. Well, we don't have a record of that conference. What I'm saying is if at that conference the judge had started off by saying, well, we're here, I'm going to accept the plea or the plea agreement today, but I understand you have something else that you want to bring to my attention. Well, she's just informed Mr. Scott's counsel that she's accepting the plea, and now even if it's the first thing he gets to say in that off-the-record conference, he's too late. It sounds to me, using old civil litigation strategy, it sounds like a default acceptance. You ran in and said, Your Honor, get this on the record. We don't want him to be able to withdraw this for any or no reason. It used to happen default judgments were entered that way. New rules were put in that gave people time. My only point is we don't know exactly what happened there, and so therefore it's not quite as clear. I just don't understand how you can say that based on Martino's testimony. If you accept Martino's testimony, you have to accept the fact that he said to Scott once, withdraw the plea on August 15th before the time the district court put on the record that they were accepting the plea agreement. But you have to put it on the record for it to be an acceptance. That's a different question. I think that's what I'm trying to make. You're absolutely right, Your Honor. I'm just trying to get the chronology done. Yes, and you're absolutely right. Now that's another question. That's one of the questions we have to decide. Right, and perhaps it's on me for having confused the two questions, but that is exactly the point I'm trying to make, which is if the judge off the record at that earlier conference had said she was accepting the plea prior to Mr. Martino saying that his client wished to withdraw the plea, then that changes the analysis. But specifically to what you're saying, Mr. Fisher, you're absolutely right, that if we credit Mr. Martino, he did go in there and tell the judge, my client would like to withdraw his plea, before the judge explicitly on the record in the second conference said, I'm accepting the plea agreement. Why isn't that fact the support for the IAC claim? That is, he knows that his client wants to withdraw, and he should have taken the action. The first thing I do when I walk into the court is on the record say, my client wants to withdraw, because I presume your position would be that had he said before the judge put on the record that I accept the plea, no judge, my client wants to withdraw the plea, that that would have been sufficient time for the court to then say, oh, your client wants to withdraw, I'll allow it. If I understand correctly, you're looking at why didn't he walk in at the very beginning? No, I'm asking a couple of questions. The most important of which is, if the timing was slightly different at the on the record hearing, and Martino essentially beat the judge to the punch by saying on the record, before the judge said, I accept the plea, judge, my client wants to withdraw, my question to you is, would that have been sufficient timing for Mr. Scott to then be permitted to withdraw? Absent any other factors such as the district court saying, well, as I already told you earlier, I'm accepting the plea. If the first thing on the record was Mr. Martino going in and saying that, yes, it would change the analysis. That being said, as I just mentioned, if the district court followed up and said, well, hold on just a moment, off the record just a little while ago when you first came up to my chambers, I alerted you that I was accepting the plea, then merely going in at the very beginning of the on the record conference and saying that on Mr. Martino's part would not have been enough. Let me ask you one other question, Mr. Cerruti, on this previous litigation bar. In light of Martino's testimony, in light of Martino's testimony, do you think, is there any basis upon which there can be an exception to the previous litigation bar based on that testimony? I don't think so in this case because, again, as was observed earlier, Mr. Martino was available for questioning at the time that that previous issue, this very issue, was raised. And so while opposing counsel might argue there was nothing on the record that might very well be true, but that didn't have to necessarily be the case. And so if you're going to raise the argument at that point, I think there is some responsibility to go out and find evidence, marshal that evidence to support the argument. If it wasn't done, it wasn't done. How would you do that, though, on direct appeal? Well, you could certainly, the affidavit, move the court to expand the record because the issue is being brought to the floor at that point. There may have also been the ability, off the top of my head, to try and get the district court to expand the record in some way. But, again, even once we get to the 2255, you look at the information that was actually brought out from Mr. Martino, and, again, the United States position is it doesn't really clarify anything. Okay. I think we understand your position, Mr. Cerruti. And Ms. Wilson. Thank you, Your Honors. Mr. Cerruti's argument is very interesting because he hangs his hat for purposes of the IAC claim on the testimony of Mr. Martino, and he, again, endorses District Judge Kane's finding that the testimony was credible. But when we switch gears and we talk about the second issue and the potential error by the district court, the government distances itself from Mr. Martino's testimony. I think what's good for the goose is good for the gander. If we're crediting Mr. Martino's testimony, as the district court did, then we should examine his testimony. And his testimony was, hey, I walked into the judge's chambers and I advised her and AUSA Zubrod that my client wished to withdraw his plea. His testimony then was, the judge told me to go back and talk to my client again and make sure that's what he wanted to do. Then Mr. Martino's testimony was, having received Mr. Scott's affirmation that that was his decision, he went back to what was then the transcribed on-the-record conference, and we know what the record is from that. So we're either all in with Mr. Martino's testimony or we're not. Now, Judge Fischer, with respect to your point, and actually Judge Greenaway as well, if what happened at this chambers conference, the off-the-record portion, was essentially simultaneous comments, in the same moment that Judge Kain wanted to announce that she was accepting the plea in the plea agreement, at the very same moment Mr. Martino wanted to announce to the court his client wished to withdraw the plea. So we have two comments passing over each other. If that's actually what happened, I don't think the test should be who got to the punch first. I don't think that's what this should come down to when we're talking about a defendant's right to a trial. So the fact that a conference took place... So what should it be? I think that in this particular case, I'm not trying to suggest to the court what the rules should be, although I do want to come back to Judge Roth's question about what degree of clarity should be required from a district court. In this particular case, the fact that the testimony, the unrefuted testimony, was that a conference took place during which the district court was told that the defendant wished to withdraw his plea before she had formally, on the record, accepted the plea. The answer should be the defendant at that moment had a right to withdraw his plea for any reason or no reason, and it was an error for the court to deny him that privilege. Lastly, with respect to Judge Roth's question, I think it would be appropriate for this court to announce a clear rule, and it would be, frankly, beneficial to district courts and to litigants, that a formal, explicit acceptance of a plea is required on the record. This case, the history of this case, could have been avoided, quite frankly, if the district court had simply done something very clear on the record back in 2007, either explicitly accepting the plea but deferring acceptance of the plea agreement, or not. So I think finality would be beneficial to the parties, clarity would be beneficial, and I would ask this court to go ahead and make that ruling. Was there any other instance? Your adversary mentioned, I believe, the July letter as the only instance where Mr. Martino gave incorrect advice, corrected it, and let Mr. Scott know about the correction. From your perspective, is that so? Is it limited to that one instance? Yes, it was actually a March 2008 letter that Mr. Martino sent. That was my mistake and not his. Different letters discussed. In March 2008, the record shows that Mr. Martino sent a letter with misadvice about the ability to withdraw the plea. Mr. Martino's testimony in the evidentiary hearing was he corrected that misadvice and time marched on. And, in fact, Mr. Scott later wrote a letter, the July 2008 letter that I'm pointing to, and said, yes, well, I want to do that. I want to withdraw my plea. I believe Mr. Scott testified that he was very clear about the fact that he was permitted to withdraw his plea for any reason or no reason. So I think it's correct to say that Mr. Martino had corrected his misadvice by the time my client expressed his desire to withdraw his plea. Thank you. Thank you. All right. We thank both counsel for excellent arguments on a very interesting and difficult case, and we will take the matter under advisement. Thank you.